**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CFIT HOLDING CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 1:20-cv-03453 |
| | ) | |
| v. | ) | |
| | ) | |
| TWIN CITY FIRE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT**
**TO PLAINTIFF'S COMPLAINT**

Defendant Twin City Fire Insurance ("Twin City" or "Defendant"), by and through its

counsel, hereby answers and responds to CFIT Holding Corporation's ("Plaintiff's") Complaint

and Request for Declaratory Relief ("Complaint").

**NATURE OF THE CASE**[1]

**1. CFIT Holding Corporation ("CFIT" or "Plaintiff"), brings this action
against defendant, Twin City Fire Insurance Company ("Twin City" or "Defendant") for
failing to abide by the terms of the commercial business owner's policy issued to CFIT.
CFIT paid its premiums on the policy, since May of 2018 with the expectation that Twin
City would honor its promises under its insurance policy and pay claims covered by the
policy it wrote and issued upon proper notice.**

**ANSWER:** Paragraph 1 states legal conclusions to which no response is required. To the

extent a response is required, Twin City is without knowledge or information sufficient to form a

reasonable belief regarding the truth and accuracy of the allegations in Paragraph 1 regarding

Plaintiff's expectations, and therefore denies same. Twin City admits that it issued a business

---

[1] For ease of reference, this Answer uses the headings and subheadings that Plaintiff included in
its Complaint. The use of such headings is not an admission by Twin City of the truth of any
allegations contained in the headings or subheadings. Twin City denies any suggestions implied
by the headings and subheadings.

owner's insurance policy to Plaintiff and that Plaintiff paid its premiums under the policy. Twin City denies all of the remaining allegations in Paragraph 1.

**2.     During the policy period, in March of 2020, CFIT was forced to halt and suspend all of its business activities by closing its twenty-two (22) physical fitness facilities in Illinois and Indiana due to the COVID-19 pandemic. Specifically, Illinois Governor J.B. Pritzker issued an executive order on March 15, 2020 banning all public and private gatherings of 50 or more people including "fitness centers/health clubs," in an effort to limit infection and death resulting from the spread of the virus.**

**ANSWER:** The allegations in Paragraph 2 are not directed at Twin City and therefore no response is required. To the extent a response is required, Twin City states that Illinois Governor J.B. Pritzker issued an executive order on March 16, 2020, the contents of which speak for themselves. Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the remaining allegations in Paragraph 2 as stated, and therefore denies same.

**3.     On March 20, 2020, Governor Pritzker issued a Closure Order (Executive Order 2020-10) (a.k.a., a Stay At Home Order) requiring all Illinois residents to stay at home barring exceptions for essential activities (specifically excluding from essential activities: fitness and exercise gyms; spas; salons; and similar facilities).**

**ANSWER:** The allegations in Paragraph 3 are not directed at Twin City and therefore no response is required. To the extent a response is required, Twin City admits that Illinois Governor J.B. Pritzker issued an executive order on March 20, 2020 regarding COVID-19, the contents of which speak for themselves. Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the remaining allegations in Paragraph 3 as stated, and therefore denies same.

**4.     On March 23, 2020, Indiana Governor Eric Holcomb followed suit in an order prohibiting all activities outside the home, including going to "fitness and exercise gyms," and exempting only essential travel, business governmental and healthcare activities.**

**ANSWER:** The allegations in Paragraph 4 are not directed at Twin City and therefore no response is required. To the extent a response is required, Twin City admits that Indiana Governor Eric Holcomb issued an order on March 23, 2020 regarding COVID-19, the contents of which speak for themselves. Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the remaining allegations in Paragraph 4 as stated, and therefore denies same.

5. **Before this, on March 11, 2020, the World Health Organization officially characterized COVID-19 as a pandemic (the "Pandemic"), raising the health emergency to its highest level. Since that time, the number of cases of the virus has increased exponentially globally, with about 210 countries and territories affected.**

**ANSWER:** The allegations in Paragraph 5 are not directed at Twin City and therefore no response is required. To the extent a response is required, Twin City admits that the World Health Organization characterized COVID-19 as a pandemic on March 11, 2020. Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the remaining allegations in Paragraph 5 as stated, and therefore denies same.

6. **The losses CFIT has incurred and will incur until the governors in Illinois and Indiana lift their closure orders are due to circumstances beyond its control which are no fault of its own. To protect its business, its investors and its employees, CFIT submitted a claim to Twin City under the business owner's policy which CFIT had acquired for just this type of crisis.**

**ANSWER:** Twin City admits that Plaintiff submitted a claim under the policy. Twin City denies the remaining allegations in Paragraph 6 and denies that Plaintiff is entitled to the relief requested.

7. **CFIT's business owner's policy was intended to cover losses incurred due to a "necessary suspension" of its operations for numerous reasons, including government orders forcing them to close their operations. Despite having given proper and timely notice, however, Twin City has refused to pay CFIT's claim for losses sustained due to the COVID-19 closure order.**

3

**ANSWER:** Paragraph 7 states legal conclusions to which no response is required. To the extent a response is required, Twin City admits that it denied coverage under the Policy, the terms of which speak for themselves. Twin City denies the remaining allegations of Paragraph 7.

**8.      Due to Twin City's failure to pay CFIT's claim, CFIT has no option but to seek a declaratory judgment pursuant to the Illinois Declaratory Judgment Act, 735 ILCS 5/2-701, establishing that it is entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the business losses it has sustained.**

**ANSWER:** Paragraph 8 states legal conclusions to which no response is required. To the extent a response is required, Twin City admits that Plaintiff seeks a declaratory judgment. Twin City denies the remaining allegations of Paragraph 8 and denies that Plaintiff is entitled to the relief requested.

## THE PARTIES

**9.      Plaintiff, CFIT, is a corporation formed under Illinois law with its principal place of business in Burr Ridge, Illinois.**

**ANSWER:** Based on information and belief, Twin City admits the allegations of Paragraph 9.

**10.      Defendant, Twin City, is an insurance company formed under the law of Indiana with its principal place of business in Hartford, Connecticut.**

**ANSWER:** Twin City admits the allegations of Paragraph 10.

## JURISDICTION AND VENUE

**11.      This Court has jurisdiction over this matter under 735 ILCS 5/2-209(a) because the Defendant does business in Illinois.**

**ANSWER:** Paragraph 11 states legal conclusions to which no response is required. To the extent a response is required, Twin City admits that the United States District Court for the Northern District of Illinois is the proper Court to which this lawsuit was to be removed.

12.     **Venus is proper pursuant to 735 ILCS 5/2-101 because the transaction out of which the cause of action arose occurred in Cook County, Illinois.**

**ANSWER:** Paragraph 12 states legal conclusions to which no response is required.  To the extent a response is required, Twin City admits that the United States District Court for the Northern District of Illinois is the proper Court to which this lawsuit was to be removed.

## FACTUAL BACKGROUND

13.     **CFIT is the owner/operator of twenty-two (22) fitness facilities located in Illinois and Indiana.**

**ANSWER:** Upon information and belief, Twin City admits the allegations of Paragraph 13.

14.     **All of CFIT's fitness facilities have the legal occupancy capacity to hold well over fifty (50) people.  Groups of over fifty CFIT members and guests regularly gathered at CFIT's facilities to use the fitness equipment and to participate in fitness classes and individual training sessions.**

**ANSWER:** The allegations in Paragraph 14 are not directed at Twin City and therefore no response is required.  To the extent a response is required, Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 14, and therefore denies same.

15.     **CFIT's patrons cannot use its equipment, attend its classes or receive individual training without violating the six-feet of separation, social distancing rule contained in executive orders issued by the governors of Illinois and Indiana.**

**ANSWER:** The allegations in Paragraph 15 are not directed at Twin City and therefore no response is required.  To the extent a response is required, Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 15, and therefore denies same.

16.     **Scores of physical fitness studios and gyms across the nation have closed due to similar closure orders issued to prevent the spread of the COVID-19 virus.  These include Equinox, 24 Hour Fitness, Gold's Gym, LA Fitness, Lifetime Fitness, Orangetheory Fitness, Planet Fitness, SoulCycle, Club Fitness, Blink Fitness, and Barry's Bootcamp.**

**ANSWER:** The allegations in Paragraph 16 are not directed at Twin City and therefore no response is required. To the extent a response is required, Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 16, and therefore denies same.

*The Policy*

**17. At all relevant times, Twin City insured Plaintiff pursuant to an insurance policy drafted by Twin City.**

**ANSWER:** Twin City admits that it issued Spectrum® Business Owner's Insurance Policy, numbered 83 SBA AC8554 (the "Policy"), to Plaintiff with a policy period from February 28, 2020 to February 28, 2021, the terms of which speak for themselves. Twin City denies the remaining allegations of Paragraph 17.

**18. CFIT is insured pursuant to policy number 83 SBA AC8554 SA with a policy period from February 28, 2020 to February 28, 2021 (the "Policy"). A copy of the Policy is attached as <u>Exhibit 1</u>.**

**ANSWER:** Twin City admits that it issued the Policy and that a copy of the Policy is attached as Exhibit 1 to the Complaint. The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 18 are inconsistent with the terms of the Policy, Twin City denies them.

**19. The Policy states that, "The following the person(s) or organization(s) are added to the Declarations as Named Insureds: CFIT HOLDING CORPORATION, INC. CFIT COOK INC. CFIT COLLAR INC FEIN 82-5168442 CFIT INDIANA, INC FEIN 82-5149412 CFIT WISCONSIN INC. FEIN 82-5149411 DBA CHARTER FITNESS."**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 19 are inconsistent with the terms of the Policy, Twin City denies them.

**20. All of Plaintiff's fitness facility locations are covered by the Policy.**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 20 are inconsistent with the terms of the Policy, Twin City denies them.

21.     Plaintiff's Policy provides coverage for loss of Special Property Coverage, Business Income ("BI"), Extra Expense ("EE") coverage, Business Income from Dependent Property coverage, Fungi, Wet Rot, Dry Rot and Microbe coverage for loss due to the actions of a Civil Authority.

**ANSWER:** The terms of the Policy speak for themselves.  To the extent the allegations

in Paragraph 21 are inconsistent with the terms of the Policy, Twin City denies them.

22.     Relevant portions of the Policy provide that,

(1) **We [Twin City] will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during "the period of restoration."  The suspension must be caused by direct physical loss to property at the 'scheduled premises', caused by or resulting from a Covered Cause of Loss.**

(2) **With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the "scheduled premises" are located, your "scheduled premises" also means:**

(a) **The portion of the building which you rent, lease or occupy; and**
(b) **Any area within the building or on the site at which the "scheduled premises" are located, but only if that area services, or is used to gain access to, the "scheduled premises".**

(3) **We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or physical damage.**

**This Additional Coverage is not subject to the Limits of Insurance.**

**…**

(5) **With respect to the coverage provided in this Additional Coverage, suspension means:**

(a) **The partial slowdown or complete cessation of your business activities; or**
(b) **That part or all of the "scheduled premises" is rendered untenable as a result of the Covered Cause of Loss if coverage for Business Income applies to the policy.**

**ANSWER:** The terms of the Policy speak for themselves.  To the extent the allegations

in Paragraph 22 are inconsistent with the terms of the Policy, Twin City denies them.

7

23.     The term, "scheduled premises" is defined in the Policy to mean "any premises listed by location address in the Scheduled Premises section of the Declarations."

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 23 are inconsistent with the terms of the Policy, Twin City denies them.

24.     The term "Business Income" is defined in the policy as the:

(a) **Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and**

(b) **Continuing normal operating expenses incurred, including payroll.**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 24 are inconsistent with the terms of the Policy, Twin City denies them.

25.     The term "suspension" is defined in the Policy to mean:

(a) **The partial slowdown or complete cessation of your business activities; or**
(b) **That part of all of the "scheduled premises" is rendered untenantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy.**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 25 are inconsistent with the terms of the Policy, Twin City denies them.

26.     The term "period of restoration" is defined in the Policy as the period of time that:

a. **Begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the "scheduled premises", and**
b. **Ends on the date when:**
    (1) **The property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;**
    (2) **The date when your business is resumed at a new, permanent location.**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 26 are inconsistent with the terms of the Policy, Twin City denies them.

27.     **The Civil Authority coverage is described in the Policy as follows:**

q. **Civil Authority**

8

**(1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of yours "scheduled premises".**

**(2) The coverage of Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:**

**(a) When access is permitted to your "scheduled premises"; or**

**(b) 30 consecutive days after the order of the civil authority.**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 27 are inconsistent with the terms of the Policy, Twin City denies them.

**28.   The term "civil authority" is not defined in the Policy.**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 28 are inconsistent with the terms of the Policy, Twin City denies them.

**29.   The Extra Expense coverage provided under the Policy is defined to pay for expense incurred;**

**(a) To avoid or minimize the suspension of business and to continue "operations":**

**(i)  At the "scheduled premises"; or**

**(ii) At replacement premises or at temporary locations, including:**

**(aa)    Relocation expenses; and**

**(bb)    Cost to equip and operate the replacement or temporary location, other than those costs necessary to repair or to replace damaged stock and equipment.**

**(b) To minimize the suspension of business if you cannot continue "operations".**

**(c) (i)  To repair or replace any property; or**

**(ii) To research, replace, or restore the lost information on damaged "valuation papers and records";**

**to the extent that it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage o., Business Income.**

9

**We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or physical damage. This Additional Coverage is not subject to the Limits of Insurance.**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 29 are inconsistent with the terms of the Policy, Twin City denies them.

30.      **An endorsement to the Policy provides "Limited Fungi, Bacteria or Virus Coverage." This endorsement states, in relevant part:**

**(2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss."**

**…**

**We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:**

**(1) Direct physical loss or direct physical damage to Covered Property caused by "fungi", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi", wet rot, dry rot, bacteria or virus;**

**(2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot, dry rot, bacteria or virus; and**

**(3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is reason to believe that "fungi", wet rot, dry rot, bacteria or virus are present.**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 30 are inconsistent with the terms of the Policy, Twin City denies them. Twin City denies the "relevant part" of the Limited Fungi, Bacteria or Virus Coverage endorsement is quoted.

31.      **The Policy defines a specified cause of loss as, "Fire; lightning; explosion, windstorm, or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.**

**ANSWER:** The terms of the Policy speak for themselves. To the extent the allegations in Paragraph 31 are inconsistent with the terms of the Policy, Twin City denies them.

32.     The term "virus" is not defined in the Policy.

**ANSWER:** The terms of the Policy speak for themselves.  To the extent the allegations

in Paragraph 32 are inconsistent with the terms of the Policy, Twin City denies them.

33.     **While the Policy was in force, Plaintiff sustained, and continues to sustain, loss due to the civil authority orders issued by the Governor of Illinois, the Illinois Department of Health, and the Governor of Indiana addressing COVID-19 and the Pandemic.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a

reasonable belief regarding the truth and accuracy of the allegations in Paragraph 33 as stated,

and therefore denies same.

34.     **While the Policy was in force, Plaintiff sustained, and continues to sustain, losses due to COVID-19 at, in, on, and/or around Plaintiff's locations and reported unspecified locations described in the Policy.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a

reasonable belief regarding the truth and accuracy of the allegations in Paragraph 34 as stated,

and therefore denies same.

35.     **While the Policy was in force, Plaintiff sustained, and continues to sustain, losses due to the spread of COVID-19 in the community.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a

reasonable belief regarding the truth and accuracy of the allegations in Paragraph 35 as stated,

and therefore denies same.

*The COVID-19 Pandemic*

36.     **COVID-19 is a virus which can be transmitted outside the human body in viral fluid particles.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a

reasonable belief regarding the truth and accuracy of the allegations in Paragraph 36 as stated,

and therefore denies same.

37. **COVID-19 can also be transmitted through contact with physical objects and surfaces designed by fomites which can carry the virus for up to twenty-eight days.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a

reasonable belief regarding the truth and accuracy of the allegations in Paragraph 37 as stated,

and therefore denies same.

38. **A recent scientific study printed in the New England Journal of Medicine explains that the virus is detectable for up to three hours in aerosol, up to four hours on copper, up to 24 hours on cardboard boxes, and up to three days on plastic and stainless steel. Notably, the most potent form of the virus is not airborne but rather present on physical surfaces.**

**ANSWER:** Paragraph 38 purports to explain a study printed in the New England Journal

of Medicine. The alleged article, to the extent it exists, speaks for itself. Twin City is without

knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy

of the allegations in Paragraph 38 as stated, and therefore denies same.

39. **COVID-19 can be transmitted and remains active on affected floors, walls, furniture, desks, tables, chairs, countertops, computer keyboards, touch screens, cardboard packages and other items of property for an extended period of time.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a

reasonable belief regarding the truth and accuracy of the allegations in Paragraph 39 as stated,

and therefore denies same.

40. **COVID-19 can be transmitted by way of human contact with surfaces and items of physical property on which COVID-19 particles are physically present.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a

reasonable belief regarding the truth and accuracy of the allegations in Paragraph 40 as stated,

and therefore denies same.

41. **COVID-19 has been transmitted by way of human contact with surfaces and items of physical property located at premises in every county in Illinois and Indiana of which Plaintiff has a facility.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 41 as stated, and therefore denies same.

42. **COVID-19 has been transmitted by human to human contact and interaction at premises in Illinois and Indiana, including places like physical fitness facilities, offices, industrial properties, hotels and restaurants.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 42 as stated, and therefore denies same.

43. **COVID-19 can be transmitted through airborne viral particles emitted into the air at premises.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 43 as stated, and therefore denies same.

44. **COVID-19 has been transmitted by way of human contact with airborne COVID-19 particles emitted into the air at premises in Illinois and Indiana.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 44 as stated, and therefore denies same.

45. **The presence of any COVID-19 particles renders items of physical property unsafe.**

**ANSWER:** The allegations in Paragraph 45 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the allegations in Paragraph 45.

46. **The presence of any COVID-19 particles on physical property impairs its value, usefulness and/or normal function.**

**ANSWER:** The allegations in Paragraph 46 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the allegations in Paragraph 46.

**47.    The presence of any COVID-19 particles causes direct physical harm to property.**

**ANSWER:** The allegations in Paragraph 47 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the allegations in Paragraph 47.

**48.    The presence of any COVID-19 particles causes direct physical loss to property.**

**ANSWER:** The allegations in Paragraph 48 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the allegations in Paragraph 48.

**49.    The presence of any COVID-19 particles causes direct physical damage to property.**

**ANSWER:** The allegations in Paragraph 49 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the allegations in Paragraph 49.

**50.    The presence of any COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness and/or normal function.**

**ANSWER:** The allegations in Paragraph 50 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the allegations in Paragraph 50.

**51.    The presence of people infected with or carrying COVID-19 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.**

**ANSWER:** The allegations in Paragraph 51 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the allegations in Paragraph 51.

52. **The presence of people infected with or carrying COVID-19 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to the premises and property.**

**ANSWER:** The allegations in Paragraph 52 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the allegations in Paragraph 52.

*COVID-19 Orders Issued by Illinois' Civil Authorities*

53. **In response to the COVID-19 and the Pandemic, the Governor of Illinois has issued multiple executive orders pursuant to the authority vested in him by the Illinois Constitution and the laws of Illinois.**

**ANSWER:** Twin City admits that the Governor of Illinois has issued orders regarding COVID-19, the contents of which speak for themselves. The remaining allegations in Paragraph 53 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the remaining allegations in Paragraph 53.

54. **Similarly, the Illinois Department of Health, pursuant to its authority under Illinois law, has issued multiple orders, including a Stay At Home Order.**

**ANSWER:** Twin City admits that the Illinois Department of Health has issued orders regarding COVID-19, the contents of which speak for themselves. The remaining allegations in Paragraph 54 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the remaining allegations in Paragraph 54.

55. **Similarly, the City of Chicago, pursuant to its authority, has issued orders, including orders strictly prohibiting any public or private gatherings of more than ten people.**

**ANSWER:** Twin City admits that the City of Chicago has issued orders regarding COVID-19, the contents of which speak for themselves. The remaining allegations in Paragraph 55 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the remaining allegations in Paragraph 55.

56. **The State of Illinois is a civil authority as contemplated by the Policy.**

**ANSWER:** The allegations in Paragraph 56 include legal conclusions to which no response is required. To the extent a response is required, the terms of the Policy speak for themselves and Twin City denies the remaining allegations in Paragraph 56.

57. **The Illinois Department of Health is a civil authority as contemplated by the Policy.**

**ANSWER:** The allegations in Paragraph 57 include legal conclusions to which no response is required. To the extent a response is required, the terms of the Policy speak for themselves and Twin City denies the remaining allegations in Paragraph 57.

58. **The Governor of the State of Illinois is a civil authority as contemplated by the Policy.**

**ANSWER:** The allegations in Paragraph 58 include legal conclusions to which no response is required. To the extent a response is required, the terms of the Policy speak for themselves and Twin City denies the remaining allegations in Paragraph 58.

59. **The City of Chicago is a civil authority as contemplated by the Policy.**

**ANSWER:** The allegations in Paragraph 59 include legal conclusions to which no response is required. To the extent a response is required, the terms of the Policy speak for themselves and Twin City denies the remaining allegations in Paragraph 59.

60. **The Mayor of Chicago is a civil authority as contemplated by the Policy.**

**ANSWER:** The allegations in Paragraph 60 include legal conclusions to which no response is required.  To the extent a response is required, the terms of the Policy speak for themselves and Twin City denies the remaining allegations in Paragraph 60.

**61.     On March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic.**

**ANSWER:** Twin City admits the allegations in Paragraph 61.  The contents of the World Health Organization declaration speak for themselves.

**62.     On March 16, 2020, Illinois J.B. Pritzker issued Executive Order 2020-07 stating "it is necessary and appropriate for the State of Illinois to immediately take measures to protect the public's health in response to this COVID19 outbreak."  With this goal in mind, Governor Pritzker prohibited all public and private gatherings of 50 people or more, including such gatherings at "fitness centers/health clubs" beginning March 18, 2020 and through the duration of the Gubernatorial Disaster Proclamation, in addition other strict mandates.  This order was in response to the physical presence of COVID-19 and the Pandemic.**

**ANSWER:** Twin City admits the Governor of Illinois issued an order regarding COVID-19 on March 16, 2020, the contents of which speaks for themselves.  To the extent the allegations in Paragraph 62 are inconsistent with the March 16 order, Twin City denies them.  Twin City denies the remaining allegations in Paragraph 62.

**63.     The states goal of this order was to slow the spread of COVID-19 with the recognition that "frequently used surfaces in public settings…if not cleaned and disinfected frequently and property, also pose a risk of exposure."  The March 16th order further provided that "social distancing, which consists of maintaining at least a six-foot distance between people, is the paramount strategy for minimizing the spread of COVID-19 in our communities."**

**ANSWER:** Twin City admits the Governor of Illinois issued an order regarding COVID-19 on March 16, 2020, the contents of which speaks for themselves.  To the extent the allegations in Paragraph 63 are inconsistent with the March 16 order, Twin City denies them.  Twin City denies the remaining allegations in Paragraph 63.

**64.     On March 20, 2020, Governor Pritzker issued a Closure Order (Executive Order 2020-10) (a.k.a., a Stay At Home Order) requiring all Illinois residents to stay at**

home barring exceptions for essential activities, including to work for or obtain services from Healthcare or Public Health Operations. This order specifically excluded fitness and exercise gyms, spas, salons, barber shops, tattoo parlors, and similar facilities from "Healthcare and Public Health Operations." Moreover, the March 20th order reduced the allowable public and private gatherings size to no more than 10 people. The March 20th order was again in direct response to the continued and increasing presence of the coronavirus on property on or around Plaintiff's premises.

**ANSWER:** Twin City admits that the Governor of Illinois issued an order regarding COVID-19 on March 20, 2020, the contents of which speak for themselves. To the extent the allegations in Paragraph 64 are inconsistent with the March 20 order, Twin City denies them. Twin City denies the remaining allegations in Paragraph 64.

65. Like the March 16, 2020 Closure Order, the March 20, 2020 Order prohibited the public from accessing Plaintiff's physical fitness facilities, thereby causing the necessary suspension of their operations and triggering the Civil Authority coverage under the Policy.

**ANSWER:** Paragraph 65 states legal conclusions to which no response is required. To the extent a response is required, the contents of the orders speak for themselves. Twin City denies the allegations of Paragraph 65.

66. On March 26, 2020, Chicago Mayor Lori Lightfoot shut down Chicago's most popular gathering spots, including the entire lakefront and all its parks, bike trails and beaches. This order also stated that subject to limited exceptions, "every gathering of more than ten people on public or private property is strictly prohibited."

**ANSWER:** Twin City admits that Mayor Lori Lightfoot issued an order regarding COVID-19 on March 26, 2020, the contents of which speak for themselves. To the extent the allegations in Paragraph 66 are inconsistent with the March 26 order, Twin City denies them. Twin City denies the remaining allegations in Paragraph 66.

*COVID-19 Orders of Indiana's Civil Authorities*

67. On March 6, 2020, Indiana Governor Eric Holcomb issued an executive order pursuant to the authority vested in him under Indiana law to declare a public health emergency in Indiana due to COVID-19 and the Pandemic.

18

**ANSWER:** Twin City admits that the Governor of Indiana has issued orders regarding COVID-19, the contents of which speak for themselves. The remaining allegations in Paragraph 67 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the remaining allegations in Paragraph 67.

**68.     Governor Holcomb issued an order on March 16, 2020 prohibiting all in-person events of more than fifty people due to COVID-19 and the Pandemic. He followed this with a "Stay at Home" order issued on March 23, 2020, directly all non-essential businesses to close and prohibiting all gatherings of more than ten people. As in Illinois, an exception was made to work for or obtain services from "Healthcare and Public Health Operations," but stated that "*Fitness and exercise gyms*, spas, salons, barber shops, tattoo parlors, and similar facilities are not included in Healthcare and Public Health Operations." (emphasis added)**

**ANSWER:** Twin City admits that the Governor of Indiana has issued orders regarding COVID-19, the contents of which speak for themselves. To the extent the allegations in Paragraph 68 are inconsistent with the March 16 and March 23 orders alleged, Twin City denies the allegations of Paragraph 68. Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the remaining allegations in Paragraph 68, and therefore denies them.

**69.     The State of Indiana is a civil authority as contemplated by the Policy.**

**ANSWER:** The allegations in Paragraph 69 include legal conclusions to which no response is required. To the extent a response is required, the terms of the Policy speak for themselves and Twin City denies the remaining allegations in Paragraph 69.

**70.     The Governor of the State of Indiana is a civil authority as contemplated by the Policy.**

**ANSWER:** The allegations in Paragraph 70 include legal conclusions to which no response is required. To the extent a response is required, the terms of the Policy speak for themselves and Twin City denies the remaining allegations in Paragraph 70.

*Civil Authorities in Illinois and Indiana Caused Plaintiff's Businesses to Close*

71.     Plaintiff's business does not qualify as an Essential Business and was required to shut down operations at all its locations.

**ANSWER:** The allegations in Paragraph 71 include legal conclusions to which no response is required.  To the extent a response is required, Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 71, and therefore denies them.

72.     The civil authority orders, including, but not limited to the Stay At Home Order, prohibit access to Plaintiff's premises described in the Policy.

**ANSWER:** The allegations in Paragraph 72 include legal conclusions to which no response is required.  To the extent a response is required, Twin City denies the allegations in Paragraph 72.

73.     The State of Illinois and the State of Indiana, through their respective governors and departments of health, have issued, and continue to issue, authoritative orders governing businesses located in their states, including Plaintiff's, in response to COVID-19 and the Pandemic, the effect of which have required and continue to require Plaintiff to cease and/or significantly reduce operations at, and that have prohibited and continue to prohibit access to, the premises described in the Policy.

**ANSWER:** The allegations in Paragraph 73 include legal conclusions to which no response is required.  To the extent a response is required, Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 73 as stated given their breadth and vagueness, and therefore denies same.

74.     State and local governmental authorities, and public health officials around the Country, acknowledge that COVID-19 and the Pandemic cause direct physical loss and damage to property.  For example:

   a. The state of Colorado issued a Public Health Order indicating that "COVID-19…physically *contributes to property loss, contamination, and damage…*" (Emphasis added);

20

b. **The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus *physically is causing property loss and damage*." (Emphasis added);**

c. **Broward County, Florida issued an Emergency Order acknowledging that COVID-19 is "*is physically causing property damage*." (Emphasis added);**

d. **The State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression…remains a public disaster affecting life, health, [and] *property*…" (Emphasis added);**

e. **The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to *physically* impact surfaces and personal *property*." (Emphasis added);**

f. **The City of New Orleans issued an order stating, "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and *causing property loss and damage* in certain circumstances." (Emphasis added);**

g. **The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "*property*." (Emphasis added); and**

h. **North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of…*property*." (Emphasis added).**

**The City of Los Angeles issued an Order in response to COVID-19 "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is *physically causing property loss or damage* due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).**

**ANSWER:** The allegations in Paragraph 74 include legal conclusions to which no response is required. To the extent a response is required, the allegations purport to characterize certain orders and proclamations, the contents of which speak for themselves. To the extent the allegations in Paragraph 74 are inconsistent with the contents of the order and proclamations referenced, Twin City denies them. Twin City denies the remaining allegations in Paragraph 74.

75. **COVID-19 and the Pandemic are physically impacting public and private property in Illinois, Indiana and throughout the country.**

**ANSWER:** Twin City denies the allegations in Paragraph 75.

21

76.    COVID-19 and the Pandemic have caused and continue to cause direct physical loss and damage to property.

**ANSWER:** The allegations in Paragraph 76 include legal conclusions to which no response is required.  To the extent a response is required, Twin City denies the remaining allegations in Paragraph 76.

77.    People in Illinois and Indiana have been diagnosed with COVID-19.

**ANSWER:** Upon information and belief, Twin City admits the allegations of Paragraph 77.

78.    People in Illinois and Indiana have, and have had, COVID-19 disease but have not been diagnosed.

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 78 as stated, and therefore denies same.

79.    People in Illinois and Indiana have COVID-19 particles on or about their person and personal property.

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 79 as stated given their breadth and vagueness, and therefore denies same.

80.    Properties and premises through Illinois and Indiana contain the presence of COVID-19 particles on surfaces and items of property.

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 80 as stated given their breadth and vagueness, and therefore denies same.

81.    It is probable that COVID-19 particles have been physically present at Plaintiff's premises described in the Policy during the time the policy was in effect.

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 81 as stated given their breadth and vagueness, and therefore denies same.

82. **It is probable that COVID-19 particles have been physically present on surfaces and items of property located at Plaintiff's premises described in the Policy during the time the policy was in effect.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 82 as stated given their breadth and vagueness, and therefore denies same.

83. **It is probable that airborne COVID-19 particles have been physically present at Plaintiff's premises described in the Policy during the time the policy was in effect.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 83 as stated given their breadth and vagueness, and therefore denies same.

84. **It is probable that people carrying COVID-19 particles in, on or about their personal have been present at Plaintiff's premises described in the Complaint during the time the policy was in effect.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 84 as stated given their breadth and vagueness, and therefore denies same.

85. **It is probable that airborne COVID-19 particles have been physically present at Plaintiff's premises described in the Policy during the time the policy was in effect.**

**ANSWER:** Twin City is without knowledge or information sufficient to form a reasonable belief regarding the truth and accuracy of the allegations in Paragraph 85 as stated given their breadth and vagueness, and therefore denies same.

86. **Plaintiff has sustained direct physical loss and damage to items of property located at its premises and direct physical loss and damage to its premises described in the Policy as a result of the presence of COVID-19 particles and/or the Pandemic.**

**ANSWER:** The allegations in Paragraph 86 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies the allegations in Paragraph 86 and denies that Plaintiff is entitled to any relief from Twin City.

87. **Plaintiff has likewise sustained loss and damage as a direct and proximate result of the orders issued by the Governor of Illinois, the Illinois Department of Health, the Governor of Indiana and the Indiana Department of Health.**

**ANSWER:** The allegations in Paragraph 87 include legal conclusions to which no response is required. To the extent a response is required, Twin City denies and the allegations of Paragraph 87 and denies that Plaintiff is entitled to any relief from Twin City.

## COUNT I - DECLARATORY RELIEF

88. **Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth and incorporated herein.**

**ANSWER:** Twin City restates and reincorporates by reference Twin City's responses to Paragraphs 1 through 87, as if fully set forth herein.

89. **Plaintiff submitted a timely insurance claim to Defendant Twin City.**

**ANSWER:** Twin City admits that Plaintiff submitted an insurance claim to Twin City on April 1, 2020.

90. **Defendant Twin City has denied Plaintiff's claim.**

**ANSWER:** Twin City admits that it properly denied Plaintiff's claim.

91. **There is a dispute regarding whether Plaintiff is entitled to coverage under the Policy for its losses sustained and to be sustained in the future. Accordingly, Plaintiff is entitled to declaratory relief from this Court pursuant to 735 ILCS 5/2-701.**

**ANSWER:** Paragraph 91 states legal conclusions to which no response is required. To the extent a response is required, Twin City admits that Plaintiff seeks a judicial declaration but denies that Plaintiff is entitled to the relief requested.

92. **Plaintiff is entitled to and demands a declaration that:**

   a.  **Plaintiff sustained direct physical loss or damage to property at its premises described in the Policy as a result of COVID-19 and/or the Pandemic;**

   b.  **COVID-19 is a covered cause of loss under the Policy;**

   c.  **the Pandemic is a covered cause of loss under the Policy;**

   d.  **the losses incurred by Plaintiff as a result of the orders issued by the Governor of Illinois, the Illinois Department of Health, and the Governor of Indiana and the Indiana Department of Health are covered losses under the Policy;**

   e.  **Defendant Twin City has not and cannot prove the application of any exclusion or limitation to the coverage for Plaintiff's losses alleged herein;**

   f.  **Plaintiff is entitled to coverage for its past and future Business Income loss(es) and Extra Expense resulting from COVID-19 and/or the Pandemic for the time period set forth in the Policy;**

   g.  **Plaintiff is entitled to coverage for loss(es) due to the actions of Illinois's civil authorities, including the Governor of Illinois and the Illinois Department of Health;**

   h.  **Plaintiff is entitled to coverage for loss(es) due to the actions of Indiana's civil authorities; including the Governor of Indiana and the Indiana Department of Health;**

   i.  **Plaintiff has coverage for any substantially similar civil authority order in the future that limits or restricts the access to Plaintiff's places of business and/or its operations; and**

   j.  **Any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.**

**ANSWER:** Paragraph 92 states legal conclusions to which no response is required. To the extent a response is required, Twin City admits that Plaintiff seeks a judicial declaration but denies that Plaintiff is entitled to the relief requested. Twin City denies the allegations of Paragraph 92.

93. **Plaintiff does not seek a determination of its damages resulting from COVID-19 and/or the Pandemic. If there is a dispute between the parties as to the amount of the loss, the Policy provides that such a dispute should be resolved by Appraisal:**

   **Appraisal**

25

**If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In that event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss.**

**If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.**

**a. Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in b. below.**

**b. We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exists:**

**(1) You demanded the appraisal; and**

**(2) The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.**

**ANSWER:** Paragraph 93 contains a declarative statement of the relief sought by Plaintiff. To the extent a response is required, Twin City denies that Plaintiff is entitled to the relief requested. To the extent Plaintiff alleges rights and obligations under the Policy that are inconsistent with the terms of the Policy, Twin City denies them. The terms and conditions of the Policy speak for themselves.

94. **Plaintiff prays for declaratory relief from the Court that Defendant must resolve any dispute about the amount of loss via Appraisal. Plaintiff also requests the Court to appoint the umpire if the appraisers cannot agree.**

**ANSWER:** Paragraph 94 contains a declarative statement of the relief sought by Plaintiff. To the extent a response is required, Twin City denies that Plaintiff is entitled to the relief requested. To the extent Plaintiff alleges rights and obligations under the Policy that are inconsistent with the terms of the Policy, Twin City denies them. The terms and conditions of the Policy speak for themselves.

95. **Plaintiff prays for any further relief the Court deems proper, including attorney fees, interest, and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.**

**ANSWER:** Paragraph 95 contains a declarative statement of the relief sought by Plaintiff. To the extent a response is required, Twin City denies that Plaintiff is entitled to the relief requested.

The "Wherefore" clause and paragraph that follows does not allege any facts and therefore no response is required. To the extent a response is required, Twin City denies that Plaintiff is entitled to the requested relief or any other relief from Twin City. To the extent any further response is required, Twin City denies the allegations contained in the "Wherefore" clause.

## TWIN CITY'S AFFIRMATIVE DEFENSES

Twin City asserts the following affirmative defenses and reserves all rights to amend or supplement these defenses when and if amended or additional defenses become appropriate and/or available in this action. The statement of any defense herein does not assume the burden of proof for any issue to which the applicable law places the burden of proof on Plaintiff.

### FIRST AFFIRMATIVE DEFENSE
(Failure to state a claim)

The Complaint fails to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
(Virus-Exclusion)

The Policy contains an exclusion titled "'Fungi', Wet Rot, Dry Rot, Bacteria and Virus." Form SS 40 93 07 05 at 1. Plaintiff's claims are barred or limited, in whole or in part, to the extent that the alleged loss or damage, if any, is excluded by the 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus exclusion.

## THIRD AFFIRMATIVE DEFENSE
### (Virus Limited Additional Coverage)

The Policy contains a provision titled "Limited Coverage For 'Fungi', Wet Rot, Dry Rot,

Bacteria and Virus." Form SS 40 93 07 05 at 2-3. Plaintiff's claims may be barred or limited, in

whole or in part, by the time period and/or sub-limits applicable to the Limited Coverage for

"Fungi", Wet Rot, Dry Rot, Bacteria and Virus provision.

## FOURTH AFFIRMATIVE DEFENSE
### (Comparative fault, waiver, estoppel, and unclean hands)

Plaintiff's claims may be barred or limited, in whole or in part, by the doctrines of

comparative fault, waiver, estoppel, and/or unclean hands.

## FIFTH AFFIRMATIVE DEFENSE
### (Merger clause)

The Policy is the sole agreement between the parties, and Defendant did not breach any

Policy terms or conditions.

## SIXTH AFFIRMATIVE DEFENSE
### (Terms of the Policy are controlling)

Defendant's obligations in the Policy are defined, limited, and controlled by the terms

and conditions of the Policy, including, but not limited to, the coverages, limits, sub-limits,

exclusions, endorsements, conditions, and all other terms set forth therein.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to comply with Policy)

Plaintiff's claims may be barred or limited, in whole or in part, to the extent that Plaintiff

failed to perform its obligations under the Policy.

EIGHTH AFFIRMATIVE DEFENSE
(Losses not covered by Policy)

Plaintiff's claims may be barred or limited, in whole or in part, to the extent Plaintiff

seeks relief for damages or losses not covered by the Policy.

NINTH AFFIRMATIVE DEFENSE
(Two or More Coverages)

The Policy contains a General Condition titled "Insurance Under Two Or More

Coverages."  Form SS 00 05 12 06 at 2.  Plaintiff's claims may be limited, in whole or in part, to

the extent the Insurance Under Two Or More Coverages provision is applicable to the loss or

damage.

TENTH AFFIRMATIVE DEFENSE
(Other insurance)

Plaintiff's claims may be barred or limited, in whole or in part, to the extent other

insurance or contributing insurance is applicable to the alleged loss or damage.

ELEVENTH AFFIRMATIVE DEFENSE
(Failure to exhaust other insurance coverage)

Plaintiff's claims may be barred or limited, in whole or in part, because Plaintiff has not

demonstrated exhaustion of coverage for losses under other more specific insurance policies.

TWELFTH AFFIRMATIVE DEFENSE
(Deductibles, Sub-limits)

Plaintiff's claims may be barred or limited, in whole or in part, by applicable deductibles,

retentions, and/or limits and sub-limits (including per occurrence limits) contained in the Policy.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Outside Period of Restoration)

Plaintiff's claims may be barred or limited, in whole or in part, to the extent Plaintiff

seeks to recover for loss incurred outside the Period of Restoration.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Law or public policy)

Plaintiff's claims may be barred or limited, in whole or in part, to the extent coverage is

excluded by express provisions of law or public policy.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Conditions precedent and subsequent)

Plaintiff's claims may be barred or limited, in whole or in part, to the extent that

conditions precedent and subsequent to the availability of insurance coverage under the Policy

have not been satisfied.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Offset)

Defendant's obligation to Plaintiff, if any, is subject to offset for recoveries by Plaintiff

from other persons or entities.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Valuation Clause)

Plaintiff's claims may be limited, in whole or in part, by the valuation provisions in the

Policy.

EIGHTEENTH AFFIRMATIVE DEFENSE
(No "direct physical loss")

Plaintiff's claims may be barred or limited, in whole or in part, to the extent there is no direct physical loss of or direct physical damage to covered property.

NINETEENTH AFFIRMATIVE DEFENSE
(No "direct physical loss" – Business Interruption)

Plaintiff's claims may be barred or limited, in whole or in part, because the interruption to Plaintiff's business, if any, was not due to the "direct physical loss of or physical damage to Covered Property… caused by or resulting from a Covered Cause of Loss." Form SS 00 07 07 05 at 10.

TWENTIETH AFFIRMATIVE DEFENSE
(Covered Cause of Loss)

Plaintiff's claims may be barred or limited, in whole or in part, to the extent Plaintiff cannot demonstrate a Covered Cause of Loss, as defined in the Policy. Form SS 00 07 07 05 at 2.

TWENTY-FIRST AFFIRMATIVE DEFENSE
(Ordinance or Law-Limits)

The Policy contains an Additional Coverage provision for "Ordinance or Law." Form SS 00 07 07 05 at 7-8. Plaintiff's claims may be barred or limited, in whole or in part, by the time period and/or sub-limits applicable to the Ordinance or Law provision.

TWENTY-SECOND AFFIRMATIVE DEFENSE
(Pollution Exclusion)

The Policy contains an exclusion titled "Pollution." Form SS 00 07 07 05 at 17-18. Plaintiff's claims may be barred or limited, in whole or in part, to the extent that the alleged loss or damage, if any, is excluded by the Pollution exclusion.

31

## TWENTY-THIRD AFFIRMATIVE DEFENSE
(Consequential Losses Exclusion)

The Policy contains an exclusion titled "Consequential Losses." Form SS 00 07 07 05 at

17. Plaintiff's claims may be barred or limited, in whole or in part, to the extent that the alleged

loss or damages, if any, are excluded by the Consequential Losses exclusion.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
(Civil Authority)

The Policy contains an Additional Coverage provision for "Civil Authority." Form SS 00

07 07 05 at 11. Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff

cannot satisfy the requirements of the Civil Authority provision that the order of civil authority

be issued as the direct result of a Covered Cause of Loss or that access to Plaintiff's premises

was prohibited by the order.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
(Business Income from Dependent Properties-Limits)

The Policy contains an Additional Coverage provision for "Business Income from

Dependent Properties." Form SS 00 07 07 05 at 11-12. Plaintiff's claims may be barred or

limited, in whole or in part, by the time period and/or sub-limits, if any, applicable to the

Business Income from Dependent Properties provision.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
(Extended Business Income-Limits)

The Policy contains an Additional Coverage provision for "Extended Business Income."

Form SS 00 07 07 05 at 11. Plaintiff's claims may be barred or limited, in whole or in part, by

the time period and/or sub-limits, if any, applicable to the Extended Business Income provision.

TWENTY-SEVENTH AFFIRMATIVE DEFENSE
(Acts or Decisions-Exclusion)

The Policy contains an exclusion titled "Acts or Decisions." Form SS 00 07 07 05 at 18.

Plaintiff's claims are barred or limited, in whole or in part, to the extent that the alleged loss or

damage, if any, is excluded by the Acts or Decisions exclusion.

TWENTY-EIGHTH AFFIRMATIVE DEFENSE
(Failure to mitigate)

Plaintiff's claims may be barred or limited, in whole or in part, to the extent that Plaintiff

failed to mitigate damages, if any. To the extent Plaintiff failed to take reasonable steps to

mitigate Plaintiff's alleged damages, if any, Plaintiff should be denied any recovery in this

action.

TWENTY-NINTH AFFIRMATIVE DEFENSE
(Reservation of future defenses)

Plaintiff's claims may be barred or limited, in whole or in part, by additional defenses

that cannot now be articulated because of the generality of the pleadings, and other presently

undeveloped information. Accordingly, Defendant reserves the right to supplement the

foregoing defenses as may appear as this case progresses to the full extent permissible by law.

**PRAYER FOR RELIEF**

WHEREFORE, based on the above answers and defenses, Defendant respectfully

requests that the Court enter an order:

    i.    denying Plaintiff the relief sought in the Complaint;

    ii.    dismissing the Complaint in its entirety with prejudice;

    iii.    awarding Defendant its costs and expenses, including its attorneys' fees; and

iv.     awarding Defendant such other and further relief as the Court deems just and proper.

Dated this 19th day of June.

Respectfully submitted,

/s/ Anthony J. Anscombe

STEPTOE & JOHNSON LLP

Anthony J. Anscombe (Ill. Bar No. 6257352)
Darlene Alt (Ill. Bar No. 6228745)
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Phone: 312-577-1265
Email: aanscombe@steptoe.com

Sarah D. Gordon
John J. Kavanagh
Caitlin R. Tharp
1330 Connecticut Avenue, NW
Washington, DC 20036
Phone: 202-429-8005
Email: sgordon@steptoe.com
*Pro Hac Vice Applications Forthcoming*

*Attorneys for Defendant, Twin City Insurance Company, Ltd*

## **CERTIFICATE OF SERVICE**

I certify that a copy hereof has been furnished to:

> Glenn L. Udell
> Shelley Smith
> Brown, Udell, Pomerantz, & Delrahim, Ltd.
> 225 W. Illinois Street, Suite 300
> Chicago, IL 60654
> ssmith@bupdlaw.com

by ECF and e-Service on June 19, 2020.

> /s/   *Anthony J. Anscombe*
> Anthony J. Anscombe