UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CFIT HOLDING CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 3453 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TWIN CITY FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

CFIT Holding Corporation alleges in this diversity suit that Twin City Fire Insurance Company, its insurer, wrongfully denied coverage for losses it suffered due to government-ordered shutdowns and contamination by virus particles during the COVID-19 pandemic. Doc. 1-1. Twin City moves for judgment on the pleadings under Civil Rule 12(c), arguing that the policy does not cover CFIT's claimed losses. Doc. 46. The motion is granted, and judgment will be entered in Twin City's favor.

**Background**

As with a Rule 12(b)(6) motion, the court on a Rule 12(c) motion assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). The court must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in CFIT's opposition papers, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted). The court must also consider "the answer … and any written

1

instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The facts are set forth as favorably to CFIT, the nonmovant, as those materials allow. *See Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017); *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). In setting forth the facts at this stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

CFIT operates fitness facilities in Illinois and Indiana. Doc. 1-1 at ¶ 2. In March 2020, in response to the COVID-19 pandemic, the Governors of Illinois and Indiana and the Mayor of Chicago issued orders prohibiting non-essential activities, including attending fitness facilities. *Id*. at ¶¶ 2-5, 62-68. The orders forced CFIT to suspend its operations. *Id*. at ¶¶ 6, 71-73, 87.

COVID-19 virus particles were both airborne and deposited on surfaces at CFIT's facilities and nearby properties. *Id*. at ¶¶ 80-85. "The presence of any COVID-19 particles causes direct physical harm to property," *id*. at ¶ 47, impairing its "value, usefulness and/or normal function," *id*. at ¶ 50. CFIT has sustained losses "as a result of the presence of COVID-19 particles." *Id*. at ¶ 86.

CFIT held a commercial business owner's policy issued by Twin City, *id*. at ¶ 1; *id*. at pp. 23-181, the pertinent terms of which are set forth below. CFIT submitted a timely insurance claim for its lost business income, which Twin City denied. *Id*. at ¶¶ 89-90.

**Discussion**

The meaning of a written contract "is generally a question of law for the court." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 586 (7th Cir. 2020) (alterations omitted). The parties agree that the Twin City policy is governed by Illinois law. Doc. 47 at 6; Doc. 49 at 3.

Under Illinois law, an insurance policy, like any contract, "is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). "[The court's] primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010). "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007) (quoting *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). "While [the court] will not strain to find an ambiguity where none exists, neither will [it] adopt an interpretation which rests on gossamer distinctions that the average person, for whom the policy is written, cannot be expected to understand." *Munoz*, 930 N.E.2d at 1004 (internal quotation marks and citation omitted).

CFIT asserts coverage under three provisions in its Twin City policy: the "Business Income" provision; the "Extra Expense" provision; and the "Civil Authority" provision. Doc. 1-1 at ¶¶ 22, 27, 29; *id*. at pp. 105-106, § A.5.o, .p, .q; Doc. 49 at 3-8, 14-15. Twin City contends that none of those provisions applies, Doc. 47 at 11-16, and adds that even if any does apply, the policy's Virus Exclusion defeats coverage, *id*. at 6-11; Doc. 1-1 at pp. 167-168. The analysis of the Business Income and Extra Expense provisions differs from the analysis of the Civil Authority provision, so the court discusses them separately.

I. **Business Income and Extra Expense Provisions**

The policy's Business Income and Extra Expense provisions both require a "direct physical loss of or physical damage to" CFIT's property that is "caused by or resulting from a Covered Cause of Loss," and provide coverage for certain losses occurring "during the 'period of

3

restoration.'" Doc. 1-1 at p. 105, § A.5.o(1), p(1). "Covered Causes of Loss" is defined as "RISKS OF DIRECT PHYSICAL LOSS," except as otherwise excluded or limited by the policy. *Id*. at p. 97, § A.3.

CFIT presents two theories for why it suffered a Covered Cause of Loss that resulted in physical loss of or physical damage to its property. The first is that the governmental COVID-19 closure orders impaired CFIT's "ability to use the scheduled premises for their intended use." Doc. 49 at 7. The second is that "the COVID-19 virus [as] a physical substance that is active on physical surfaces … render[ed] physical property unsafe and impair[ed] its usefulness and normal function." *Ibid*. Neither theory succeeds.

### A. Closure Orders Theory

The closure orders theory fails because CFIT's loss of use of its facilities due to the COVID-19 closure orders does not qualify as a "direct physical loss." As Twin City correctly argues, Doc. 47 at 12-14, "direct physical loss" requires some sort of change in the physical condition or location of the covered property, not a mere loss of use of that property.

True enough, the noun "loss," standing alone, can refer to "depriv[ation] of … a possession." *Loss*, *Oxford English Dictionary* (2d ed. 1989) (def. 2a); *see also Loss*, *Webster's Third New International Dictionary* (1961) (def. 1a) ("the act or fact of losing," "failure to keep possession," "deprivation"). But the noun "loss" in the policy's Business Income and Extra Expense provisions is modified by the adjective "physical," which in context means "tangible, concrete." *Physical*, *Oxford English Dictionary* (3d ed. updated Mar. 2006) (def. 6); *see also Physical*, *Black's Law Dictionary* (11th ed. 2019) (def. 2) ("pertaining to real, tangible objects"); *Physical*, *Webster's Third New International Dictionary*, *supra* (def. 2b) ("of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"). So

"physical loss" refers not to *any* deprivation, but rather to a deprivation caused by a tangible or concrete change in the condition or location of the thing that is lost.

The COVID-19 closure orders did not cause such a concrete or tangible "loss of" CFIT's property. *See* 10A Steven Plitt *et al.*, *Couch on Insurance* § 148:46 (West 3d ed. updated Dec. 2020) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (footnotes omitted). It follows that CFIT did not suffer the "physical loss" required for coverage under the Business Income and Extra Expense provisions.

Another strike against CFIT's position is that its interpretation of the Business Income and Extra Expense provisions is difficult to square with their "period of restoration" language. As noted, the two provisions cover losses incurred "during the 'period of restoration.'" Doc. 1-1 at p. 105, § A.5.o(1), .p(1). The policy defines the "period of restoration" to "end[] on the date when: (1) [t]he property at the 'scheduled premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; [or] (2) [t]he date when your business is resumed at a new permanent location." *Id*. at p. 119, § G.12.b.

If there had been a physical alteration to the condition or location of CFIT's property—for example, if a fire destroyed one of its fitness studios, or if a thief stole its treadmills—one could assess when the "period of restoration" would end, for there would be something to "repair[], rebuil[d] or replace[]." *Ibid*. The same cannot be said of the mere loss of use of CFIT's property. Under CFIT's theory—that the mere loss of use of property at its premises, without any physical alteration to its condition or location, is covered—when would the period

of restoration end? That question is unanswerable, for if there has been no physical alteration to the property's condition or location, there would be nothing to "repair[], rebuil[d] or replace[]." *Ibid*. Nor is there any reason to expect that, absent physical alteration to "property at the [insured's] premises," the business would resume at "a new permanent location." *Ibid*. The uneasy fit between the "period of restoration" language, which is critical to the application of the Business Income and Extra Expense provisions, and CFIT's reading of those provisions confirms that the correct reading is the one requiring some physical change in the condition or location of property at the insured's premises. *Accord Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *see also*, *e.g.*, *Chief of Staff LLC v. Hiscox Ins. Co.*, __ F. Supp. 3d __, 2021 WL 1208969, at *3 (N.D. Ill. Mar. 31, 2021) (Connecticut law) (rejecting an insured's similar argument for the same reason).

In sum, the Twin City policy's Business Income and Extra Expense provisions do not apply where, as here, a government closure order prohibits access to a business's premises but does not detrimentally change the physical condition or location of property at those premises. In so holding, this court joins the many other courts to have interpreted materially identical provisions in the same manner. *See*, *e.g.*, *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, __ F.4th __, 2021 WL 2753874, at *2 (8th Cir. July 2, 2021) ("The policy here clearly requires direct 'physical loss' or 'physical damage' to trigger business interruption and extra expense coverage. Accordingly, there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction."); *Berkseth-Rojas v. Aspen Am. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 101479, at *5 (N.D. Tex. Jan. 12, 2021) ("[D]irect physical loss or damage requires something more than mere loss of use or function."); *Henry's La. Grill,*

6

*Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289, 1296, (N.D. Ga. 2020) ("[T]he contract language [at] issue here is not ambiguous, and because the Governor's Executive Order did not create a 'direct physical loss of' the Plaintiffs' [premises], the Business Income provision does not apply to the Plaintiffs' claims."), *remanded on other grounds*, 2021 WL 1851381 (11th Cir. Apr. 8, 2021); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, 492 F. Supp. 3d 1051, 1055 (C.D. Cal. 2020) ("[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a distinct, demonstrable, physical alteration.") (some internal quotation marks omitted), *appeal docketed sub nom. Marks Engine Co. No. 28 Rest., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 20-56031 (9th Cir. Oct. 6, 2020); *see also Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 882-83 (S.D. W. Va. 2020) ("The majority of courts to address the issue … have found that COVID-19 and governmental orders closing businesses to slow the spread of the virus do not cause physical damage or physical loss to insured property.").

The court acknowledges that several district court decisions have interpreted similar insurance policy provisions to cover, or at least to possibly cover, losses due to government-imposed COVID-19 closure orders. *See*, *e.g.*, *Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, __ F. Supp. 3d __, 2021 WL 767617, at *3-5 (N.D. Ill. Feb. 28, 2021); *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, __ F. Supp. 3d __, 2021 WL 679109, at *8-10 (N.D. Ill. Feb. 22, 2021); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800-03 (W.D. Mo. 2020). But disagreement among courts regarding the interpretation of a policy provision does not, by itself, render the provision ambiguous. *See Erie Ins. Grp. v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1996) (rejecting the argument that an insurance policy term was

ambiguous "on the basis of conflicting case law" interpreting the term); *TMW Enters. v. Fed. Ins. Co.*, 619 F.3d 574, 580 (6th Cir. 2010) (Sutton, J.) ("[A] disagreement among three judges about whether a contractual provision is ambiguous does not establish that it is ambiguous … ."); *City of Austin v. Decker Coal Co.*, 701 F.2d 420, 426 n.17 (5th Cir. 1983) ("[T]he fact that courts may disagree as to the import of a contract term does not, by that fact alone, mean that it is ambiguous."); *Cont'l Ins. Co. v. Bones*, 596 N.W.2d 552, 556-58 (Iowa 1999) (holding a policy provision to be unambiguous even though other courts had interpreted similar language differently). Those other decisions therefore do not preclude rejecting CFIT's closure orders theory on a Rule 12(c) motion.

    B.    **COVID-19 Particles Theory**

CFIT's second theory, upon which it places the most emphasis in opposing dismissal, is that COVID-19 particles were physically present at its property and inflicted physical damage on that property. Doc. 1-1 at ¶¶ 45-52; Doc. 49 at 4-7. CFIT analogizes COVID-19 particles to asbestos fibers, noting that the Supreme Court of Illinois held in *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 931-32 (Ill. 1991), that asbestos fibers inflict "physical injury to tangible property." Doc. 49 at 6-7. Many decisions have rejected the analogy between COVID-19 particles and asbestos, reasoning that any damage inflicted by COVID-19 is temporary rather than permanent. *See, e.g.*, *Kim-Chee LLC v. Phila. Indemnity Ins. Co.*, __ F. Supp. 3d __, 2021 WL 1600831, at *5-6 (W.D.N.Y. Apr. 23, 2021) (citing *Wilkin*, but distinguishing "contamination by a persistent chemical or biological agent" from "contamination that is temporary"); *Am. Food Sys., Inc.*, 2021 WL 1131640, at *4 ("COVID-19 is imperceptible; it does not endure beyond a brief passage of time or a proper cleaning, let alone render the property permanently uninhabitable or unusable."); *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, __ F. Supp. 3d __, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021)

("[D]isinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces."), *appeal docketed*, No. 21-55090 (9th Cir. Feb. 5, 2021). But the court will assume without deciding that the presence of COVID-19 particles at CFIT's property caused "physical damage" within the meaning of that term in the Business Income and Extra Expense provisions, as those provisions do not provide coverage even under that assumption.

The reason is plain: CFIT's allegation that COVID-19 particles were the cause of physical damage to its property necessarily brings its insurance claim within the policy's Virus Exclusion. As noted, the Business Income and Extra Expense provisions require that the physical damage be "caused by or resulting from a Covered Cause of Loss." Doc. 1-1 at p. 105, § A.5.o, .p. The definition of "Covered Cause of Loss" specifically carves out anything "Excluded in Section B., EXCLUSIONS." *Id*. at p. 97, § A.3.a. One such exclusion is the Virus Exclusion, which states that Twin City "will not pay for loss or damage *caused* directly or indirectly by … [p]resence, growth, proliferation, spread or any activity of … virus." *Id*. at p. 167 (emphasis added). Under the Virus Exclusion's plain and obvious meaning, virus particles cannot be a Covered Cause of Loss for purposes of the Business Income and Extra Expense provisions. So CFIT finds itself in a bind: It seeks to construe COVID-19 particles as the Covered Cause of Loss because their tangible nature suggests the presence of "physical damage," but doing so necessarily triggers the Virus Exclusion.

In attempting to avoid the Virus Exclusion, CFIT argues that its losses "are the result of a global pandemic and the civil government orders," not "a result of an isolated incident affecting [CFIT] alone." Doc. 49 at 9. But that avowal flatly contradicts the key premise of CFIT's COVID-19 particles theory—that the virus itself, as a "physical substance that is active on

9

physical surfaces," caused CFIT's losses. *Id*. at 7. The Virus Exclusion rules out that theory by removing COVID-19 particles from the definition of "Covered Cause of Loss."

The policy does include a "Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus," which effectively serves as an exception to the Virus Exclusion. *Id*. at pp. 167-168, § B; *see also id*. at p. 167, § A.2.i (providing that the Virus Exclusion does not apply "[t]o the extent that coverage is provided in the … Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus"). But CFIT does not argue that it can benefit from that provision, and for good reason.

The Limited Coverage provision applies only if the virus is "the result of" a "'specified cause of loss' other than fire or lightning" or "the result of" an "[e]quipment [b]reakdown." *Id*. at p. 168, § B.1.a. There is no alleged "[e]quipment [b]reakdown" here. As for "'specified cause of loss' other than fire or lightning," the policy defines "specified cause of loss" as: "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; [and] water damage." *Id*. at p. 120, § G.19. CFIT does not claim that any of those specified causes occurred here, and the court cannot imagine how any could have. *See*, *e.g.*, *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 910 (N.D. Cal. 2020) ("[Having failed to] allege[] that the virus was caused by any of the specified causes of loss … Plaintiffs have failed to meet their burden in showing that the business losses are covered under the Policy's Limited Virus exception to the Virus Exclusion."). It follows that the Limited Coverage provision does not apply.

CFIT next argues that the Limited Coverage exception is so narrow as to be illusory, such that the policy ultimately provides not limited coverage for viruses, but no coverage at all.

10

Doc. 49 at 12-14; *see Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1023 (Ill. 2010) ("[A] reviewing court will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous."); *Aetna Cas. & Sur. Co. v. O'Rourke Bros.*, 776 N.E.2d 588, 598 (Ill. App. 2002) (rejecting an interpretation that would "deny [the insured] all coverage and make [the] policy coverage illusory"). That argument fails. To be sure, it may be highly unlikely for, say, a vehicle to crash into and puncture a water pipe connected to CFIT's premises, leading to a fungal outbreak—a scenario that could result in coverage, as the fungi would be "the result of" a "vehicle," a specified cause of loss. But materially identical coverage provisions can apply, and have applied, in easily imaginable circumstances. *See Martz v. Leading Ins. Grp. Ins. Co.*, 2014 WL 3749711, at *1-4 (N.D. Cal. July 29, 2014) (holding that mold damage, which the parties agreed qualified as "fungi" within the meaning of a "Limited Coverage For 'Fungi', Wet Rot Or Dry Rot" provision, could be the "result of" "water damage," a pertinent "specified cause of loss" under the policy); *WPB No. 1, LLC v. Valley Forge Ins. Co.*, 2007 WL 9702161, at *2-4 (S.D. Cal. Mar. 27, 2007) (holding that a "Limited Coverage for 'Fungus,' Wet Rot, Dry Rot and Bacteria" provision covered mold damage following a hurricane).

The fact that a policy provision covers an uncommon set of occurrences does not render coverage under the provision illusory, as one important purpose of an insurance policy is to protect against harms that may be out of the ordinary. *See Am. Country Ins. Co. v. Kraemer Bros.*, 699 N.E.2d 1056, 1062 (Ill. App. 1998) (rejecting the argument that "coverage was illusory because it is difficult to imagine any factual scenario" in which the provision in question would apply, reasoning that coverage is not "illusory" under Illinois law merely because the covered circumstances are uncommon); *see also Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100-01 (7th Cir. 2003) (citing with approval that passage from *Kraemer Bros.*).

11

This principle holds true for the Limited Coverage provision. *See Firenze Ventures LLC v. Twin City Fire Ins. Co.*, __ F. Supp. 3d __, 2021 WL 1208991, at *4 (N.D. Ill. Mar. 31, 2021) (rejecting the argument that a Twin City policy's Limited Coverage provision was "illusory"); *Westside Head & Neck v. The Hartford Fin. Servs. Grp.*, __ F. Supp. 3d __, 2021 WL 1060230, at *5 (C.D. Cal. Mar. 19, 2021) (ruling that the Limited Coverage provision was not "illusory," reasoning that "[t]here is no requirement that each peril[—fungi, wet rot, dry rot, bacteria, and virus—]potentially be the result of each and every specified cause of loss" or "that every specified cause of loss must result in a peril set out in the additional Limited Coverage," and adding that the insured's "assertion that a virus could never be caused directly or indirectly by any of the specified causes of loss is not plausible"); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, __ F. Supp. 3d __, 2021 WL 131556, at *9 (E.D. Pa. Jan. 14, 2021) (same).

## II. Civil Authority Provision

The policy's Civil Authority provision provides for the reimbursement of income lost "when access to your 'scheduled premises' is specifically prohibited as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'" Doc. 1-1 at p. 106, § A.5.q(1) (emphasis added). The provision thus applies only when: (1) there is a "Covered Cause of Loss to property in the immediate area" of a CFIT facility; (2) some government action prohibits "access to" that facility; and (3) the government action is taken "as the direct result of" the nearby Covered Cause of Loss.

CFIT argues that the relevant Covered Cause of Loss is "COVID-19," which "has damaged property … in the vicinity of CFITs' premises." Doc. 49 at 14. The complaint similarly alleges that "[p]roperties and premises throughout Illinois and Indiana contain the presence of COVID-19 particles," and that the government closure orders "have prohibited and continue to prohibit access to" CFIT's facilities. Doc. 1-1 at ¶¶ 73, 80. The first problem with

that argument is that, as explained above, while COVID-19 particles may cause physical damage, they are not a Covered Cause of Loss due to the Virus Exclusion. Doc. 1-1 at p. 167. Like the Business Income and Extra Expense provisions, the Civil Authority provision requires a Covered Cause of Loss, which physical virus is not.

Coverage under the Civil Authority provision also fails because the complaint does not allege that the government closure orders were "a direct result of" of COVID-19 contamination at properties near CFIT's facilities. *Id*. at p. 106, § A.5.q(1). To the contrary, the complaint alleges that the closure orders were "in response to COVID-19 and the Pandemic" in general. *Id*. at ¶ 73. That makes sense, as it would be highly implausible to allege that the Governors and Mayor were reacting to the virus's presence at a particular location, rather than implementing prophylactic measures in light of the pandemic as a whole. *Cf. Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (holding that civil authority coverage did not apply in the case of a hurricane evacuation order issued as a preventative measure before any property damage occurred in the vicinity).

**Conclusion**

Twin City's motion for judgment on the pleadings is granted. CFIT's opposition brief does not request an opportunity to replead in the event Twin City's motion were to be granted. Accordingly, judgment will be entered in favor of Twin City and against CFIT. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing … in any of our cases[] suggests that a district court must give leave to amend a complaint where a party does not

13

request it … . To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request … .").

July 8, 2021

_____
United States District Judge